UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATALIE MOCKLER,

    Plaintiff,

v.                      Case No.:  8:23-cv-01024-NHA

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## ORDER

Plaintiff asks the Court to reverse the December 15, 2022 denial of her claim for a period of disability and disability insurance benefits ("DIB"). Plaintiff argues that the Administrative Law Judge ("ALJ") erred in (1) defining the contours of Plaintiff's residual functional capacity ("RFC"), by (a) incorporating a noise limitation different from the one on which the vocational expert based his opinions about what jobs Plaintiff could perform, and (b) failing to incorporate her mild limitations as to concentration, persistence, and pace; (2) determining Plaintiff could still perform her past work as she performed it, which she alleges requires more time handling objects than allowed by her RFC; (3) finding Plaintiff's skills were transferrable to two other semi-skilled occupations available in the work force; and (4) determining that Plaintiff could perform work that required more than very

short, on-the-job training. Having reviewed the parties' briefing and the record below, I find the ALJ's decision was based on substantial evidence and employed proper legal standards. I affirm.

## I.    Background

Plaintiff, who was born in 1970, completed two years of college and had prior work experience as an accounting clerk. R. 295, 340. Plaintiff claims she became disabled on October 28, 2018. R. 295. Plaintiff alleged her disability resulted from anxiety, nausea, and rheumatoid arthritis. R. 339. Plaintiff applied for a period of disability and DIB on January 23, 2019. R. 295-96. The Commissioner denied Plaintiff's claim, both initially and upon reconsideration. R. 111, 119. Plaintiff then requested an administrative hearing. R. 132. Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. R. 34-62.

At the hearing, Plaintiff testified that, from 2008 to 2018, she held various jobs in accounting departments in the insurance industry. R. 40-42.

Relevant to her arthritis claim, she testified that her job as an accounting clerk, as she performed it, required her to "handle, grab, or grasp big objects" one hour per day and "write, type, or handle small objects" six hours per day. R. 364-370.

Relevant to her anxiety claim, Plaintiff explained that the medication she took for her anxiety made it hard for her to concentrate and that, while

driving, she had forgotten where she was going on numerous occasions. R. 47, 50-51. Plaintiff testified that her "lack of being able to concentrate on multiple things" would now keep her from being able to work full-time. R. 44.

The record before the ALJ indicated that, during treatment for her generalized anxiety disorder, Tampa Bay Area Counseling noted that Plaintiff's "attention/concentration" were "good" on multiple occasions. R. 883, 955, 962, 965, 967, 969, 974, 976, 980, 982, 984, 986, 989, 992, 994, 996, 998, 1001, 1003, 1005, 1007, 1009, 1011, 1013, 1015, 1017, 1019. On a Mental Residual Functional Capacity Form, Dr. David Hicks noted that Plaintiff did not have any deficiencies in concentration, persistence, or pace that would cause frequent failure to complete tasks in a timely manner, in work settings or elsewhere. R. 842. State agency psychological consultants Dr. Michael Stevens and Dr. Lee Reback found Plaintiff had mild limitations in her ability to concentrate, persist, or maintain pace. R. 72-73, 92-93.

A Vocational Expert ("VE") listened to Plaintiff testify about her physical and mental health, reviewed Plaintiff's file, and was familiar with jobs that existed in the national economy. R. 52-53. At the hearing, the ALJ asked the VE how Plaintiff's past accounting department work would be classified under the Dictionary of Occupational Titles ("DOT"). R. 43. The VE classified Plaintiff's past work as an accounting clerk, with a Specific Vocational Preparation ("SVP") level of five, and as an insurance clerk, with an SVP level

of four. R. 43.   The DOT defines "Specific Vocational Preparation" as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT Appendix C - Components of the Definition Trailer, 1991 WL 688702. SVP level four requires "[o]ver 3 months up to and including 6 months" of preparation, and SVP level five requires "[o]ver 6 months up to and including 1 year" of preparation. *Id.*

The ALJ asked the VE whether a hypothetical person with Plaintiff's age, education, experience, and limitations could perform Plaintiff's past work. *Id.* Specifically, and in relevant part, the ALJ posited that the hypothetical person could only occasionally reach overhead bilaterally or be exposed to a "noise level above the average modern office setting," and could frequently perform bilateral handling in a right hand-dominant person. *Id.* "Frequently," under the Selected Characteristics of Occupations, "means that the activity or condition occurs one-third to two-thirds of an 8-hour workday." Program Operations Manual (POMS), DI 25001.001 Medical and Vocational Quick Reference Guide, https://secure.ssa.gov/ poms.nsf/lnx/0425001001. "Handling" is defined as "[s]eizing, holding, grasping, turning, or otherwise working with the hand or hands. Fingers are involved only to the extent that they are an extension of the hand (rather than as in 'fingering')." *Id.*

The VE testified that a person with those limitations would be able to perform Plaintiff's past work as an accounting clerk, as she actually performed it and as it was generally performed in the national economy. R. 54-55.

The ALJ also questioned the VE about whether a person with Plaintiff's limitations could perform other work in the national economy. R. 55. The VE testified that Plaintiff could perform work as a cost accounting clerk (which has an SVP level four), a return item clerk (which has an SVP level four), and a credit card clerk (which has an SVP level three), and noted that there were 20,000 of each job in the national economy. R. 58-59. The VE explained that his testimony was consistent with the descriptions of these jobs in the DOT and Selected Characteristics of Occupations, apart from his testimony on reaching bilaterally above the shoulders, for which the VE relied on his experience and education because the DOT does not distinguish between reaching overhead and reaching in any other direction. R. 52, 56-57.

Following the hearing, the ALJ found Plaintiff was not disabled and denied Plaintiff's claims for benefits. R. 11-27.

The ALJ used the Social Security Regulations' five-step, sequential evaluation process to determine whether Plaintiff was disabled. *Id*. That process analyzes:

1) Whether the claimant is currently engaged in substantial gainful activity;

2) If not, whether the claimant has a severe impairment or combination of impairments;

3) If so, whether the impairment(s) meet(s) or equal(s) the severity of the specified impairments in the Listing of Impairments;

4) If the impairment does not, whether, based on a residual functional capacity ("RFC") assessment, the claimant can perform any of his or her past relevant work despite the impairment; and

5) If not, whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4)(i)-(v).

Following the hearing, the ALJ concluded that:

1) Plaintiff had not engaged in substantial gainful activity since October 28, 2018, the alleged onset date. R. 14.

2) Plaintiff did have severe impairments, specifically, "inflammatory arthritis, fibromyalgia, osteoarthritis in the bilateral knees, migraine headache disorder, and obesity." *Id.* Plaintiff also had a non-severe impairment of anxiety and mild limitations in interacting with others, concentrating, persisting, and maintaining pace. R. 14-15.

3) Notwithstanding the noted impairments, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.

4) Plaintiff's RFC allowed her to perform sedentary work subject to certain limitations. *Id.* Relevant here, she could occasionally reach overhead bilaterally and *frequently handle bilaterally* in a right hand-dominant person. *Id.* She occasionally could be exposed to noise level above the average modern office setting, *pursuant to the Selected Characteristics of Occupations ("SCO") noise level of three. Id.* Considering Plaintiff's noted impairments and the assessment of VE, Plaintiff had the RFC to perform her past relevant work as an accounting clerk, both as she previously performed it and as it was generally performed. R. 25.

5) Plaintiff could also perform the jobs of cost accounting clerk and return item clerk, which jobs existed in substantial numbers in the national economy. R. 26.

Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. R. 27.

Following the ALJ's ruling, Plaintiff requested review from the Appeals Council, which denied it. R. 1-3. Plaintiff then timely filed a complaint with

this Court. Compl. (Doc. 1). Plaintiff filed a brief opposing the Commissioner's decision (Doc. 15), and the Commissioner responded (Doc. 22). Plaintiff did not file a reply. The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 US 97, 103, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words,

8

the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for her decision with enough clarity to enable the Court to conduct meaningful review of the standards he employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

The claimant carries the "heavy burden" of showing that her impairment prevents her from performing her past relevant work. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (*citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (explaining that the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."). And, if an ALJ errs it his decision, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If "remand would be an idle and useless formality," a reviewing court

is not required to "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

In making its decision, the Court must review the entire record. *Id.*; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

### III.   Analysis

Plaintiff argues that the ALJ committed five errors: (1) the ALJ's RFC finding incorporated a different description of the noise level to which Plaintiff could be exposed than the one on which the VE based his opinion; (2) the ALJ failed to include Plaintiff's mild limitations in concentration, persistence, and pace in the RFC assessment; (3) the ALJ's finding that Plaintiff could perform her past relevant work was inconsistent with the bilateral handling limitations she incorporated into Plaintiff's RFC; (4) the ALJ erred in finding that Plaintiff could perform jobs with a Specific Vocational Preparation ("SVP") level greater than one, because a prior SSA letter stated Plaintiff could perform jobs with an SVP level of one; and (5) the ALJ was prohibited from considering semi-skilled jobs to which Plaintiff's skills were transferable, rather than only skilled jobs, and needed to find more than two jobs Plaintiff could perform to find her not disabled. Plaintiff does not cite any medical evidence to support her arguments. (*See* Doc. 15.)

A. <u>The ALJ's Descriptions of Plaintiff's Noise-Exposure Limitation.</u>

Plaintiff first argues that the ALJ erred in phrasing the description of Plaintiff's noise limitation in the RFC differently than the noise limitation described to the VE.

A VE is an expert on the types of jobs a claimant can perform based on his or her RFC. 20 C.F.R. § 404.1560(b)(2). The role of the VE is to answer questions posed by the ALJ about whether a hypothetical person with the same characteristics and limitations as the claimant could secure employment in the national economy. *Id.* An ALJ must pose to the VE a hypothetical person that has all of the claimant's impairments and limitations. *Wind v. Barnhart*, 133 F. App'x 684, 694 (11th Cir. 2005); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). But the hypothetical does not need to include "each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007).

Plaintiff argues that the ALJ asked the VE to opine about a hypothetical person with a different noise-exposure limitation than the limitation the ALJ ultimately found applied to Plaintiff. (Doc. 15, p. 5.) Thus, the argument continues, the VE did not opine—and there is insufficient evidence to find-- that someone with *Plaintiff's* limitations could perform the jobs the ALJ

ultimately found Plaintiff could perform. The Commissioner responds that the ALJ's error was harmless. (Doc. 22, p. 6.)

Here, the ALJ asked the VE about jobs that could be performed by a hypothetical person who, among other things, could have only "occasional exposure . . . to noise level above the average modern office setting." R. 53-54. The VE testified that a person with the characteristics of the ALJ's hypothetical person could perform Plaintiff's past relevant work as an accounting clerk. R. 54-55.

Later, in formulating Plaintiff's RFC, the ALJ found that Plaintiff could only occasionally be exposed to a "noise level above the average modern office setting, *pursuant to the Selected Characteristics of Occupations (SCO) noise level of three.*" R. 16 (emphasis added). Relying in part on the VE's testimony, the ALJ found that someone with Plaintiff's limitations could perform her past work as an accounting clerk. R. 25.

Plaintiff argues that, because the hypothetical noise limitation posed to the VE did not specifically qualify the noise level of the "average modern office setting" as a noise level three in the SCO, the ALJ's hypothetical to the VE did not include all of Plaintiff's limitations as found in the RFC. (Doc. 15, pp. 4–8.) Plaintiff concedes that "there might be some overlap" between the terms "average modern office noise" and "SCO noise level of three," but contends that the hypothetical question posed to the VE incorporated a common

12

understanding, or the VE's experience of, an "average modern office setting," which Plaintiff insists differs from the definition of SCO noise level three.[1] (Doc. 15, p. 5.)

Defendant argues that the phrasing discrepancies between the hypothetical posed to the VE and the RFC comprise a distinction without a difference and that, in any event any error would have been harmless. (*See* Doc. 22, p. 6.)

The SCO defines a noise level of three as "moderate." U.S. Dep't. of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D, Environmental Conditions (1993). The SCO provides the illustrative examples of a "business office where type-writers are used; department store; grocery store; light traffic; fast food restaurant at off-hours." *Id.*   Under the DOT, an accounting clerk job (Plaintiff's past relevant work) includes exposure to "level 3 – moderate" noise.

---

[1]First, Plaintiff does not demonstrate that there is any inherent difference in the definitions. Second, Plaintiff's counsel did not object, on vagueness or any other grounds, to the phrasing of this limitation at the hearing. And, "[c]ourts in this circuit routinely reject the argument that the limitation is vague where . . . there is no indication that either the ALJ or the VE misunderstood its plain meaning." *See Thomas v. Comm'r of Soc. Sec.*, 2020 WL 5810219, at *4 (M.D. Fla. Sept. 30, 2020) (collecting cases); *see also Zahnd v. Sec'y of Dep't of Agric.*, 479 F.3d 767, 773 (11th Cir. 2007) (a court will uphold "a decision of less than ideal clarity if the agency's path may be reasonably discerned.")

U.S. Dep't. of Labor, *DOT*, DICOT 216.482-010, 1991 WL 671933.[2] So, the ALJ found Plaintiff could only occasionally be exposed to more than "moderate" noise and found that Plaintiff could perform the accounting clerk job, which involved exposure to "moderate noise."

Plaintiff, relying on *Dial v. Comm'r of Soc. Sec.*, 403 F. App'x 420, 421 (11th Cir. 2010), argues that—notwithstanding the congruity of Plaintiff's limitations and the job selected for her—the ALJ's varied phrasing was harmful. (Doc. 15, p. 8.) In *Dial*, the Eleventh Circuit found reversible error where the ALJ failed to include all of the claimant's employment limitations in the hypothetical question posed to the VE. *Dial*, 403 F. App'x at 421. There, "the ALJ's hypothetical questions to the VE . . . failed to include any limitations regarding climbing ladders, ropes, or scaffolds or working near dangerous hazards such as unprotected heights or around moving machinery." *Dial v. Astrue*, No. 8:08-cv-805-T-27TBM, 2010 WL 11596945, at *6 (M.D. Fla. Jan. 25, 2010), *report and recommendation adopted*, No. 8:08-CV-805-T-27TBM, 2010 WL 11596946 (M.D. Fla. Feb. 16, 2010*), vacated and remanded sub nom. Dial v. Comm'r of Soc. Sec.*, 403 F. App'x 420 (11th Cir. 2010). The government argued there, as here, that the omission was harmless because the DOT

---

[2] Cost accounting clerk and return item clerk (the jobs the ALJ found Plaintiff capable of performing at step five of the sequential evaluation process) also include exposure to "level 3 – moderate" noise. U.S. Dep't of Labor, *DOT*, DICOT 216.382-034, 1991 WL 671925; DICOT 216.382-058, 1991 WL 671929.

showed that none of the jobs the ALJ found Dial could perform exceeded the omitted limitations. *See id.* In reversing, the Eleventh Circuit held that, while the ALJ *could have relied on the DOT definitions to support his conclusion*, because the ALJ did not–and "instead relied *only* on the testimony of the VE, who was not instructed on all of Dial's limitations"—the ALJ's opinion was not supported by substantial evidence. *Id.* at 421 (emphasis added).

*Dial* is distinguishable. Here, both the VE and the ALJ relied on the DOT in their analyses. During the hearing, the ALJ openly confirmed with the VE that the VE's testimony was consistent with both the DOT and the SCO (apart from his testimony on bilateral reaching, which discrepancy the ALJ later resolved). R. 52, 56-57; *see Hedges v. Comm'r of Soc. Sec.*, 530 F. Supp. 3d 1083, 1096–97 (M.D. Fla. 2021) (finding ALJ relied on the DOT where VE testified that his testimony was consistent with the DOT). Then, the ALJ expressly noted in her analysis of Plaintiff's ability to perform her past work that she took administrative notice of "'reliable job information' available from various publications, including the Dictionary of Occupational Titles (DOT) when determining the physical and mental demands of occupations." R. 25. In other words, the ALJ in this case did what the Eleventh Circuit in *Dial* expressly permitted: she relied on the DOT in conjunction with the VE's testimony to support her finding that Plaintiff could perform her past relevant work.

In sum, the ALJ found that Plaintiff could be exposed to moderate noise and, consistently, found that Plaintiff could perform her past relevant work which the DOT described as one involving moderate noise. The ALJ expressly relied on substantial evidence—the VE's testimony and the DOT–to support these findings. Thus, Plaintiff fails to demonstrate error, much less harmful error, associated with the ALJ's phrasing discrepancies. *See Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) (finding ALJ's failure to include driving limitation in hypothetical to VE was harmless because it did not affect the outcome of claimant's case); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (noting that remanding for express findings would be inappropriate if "doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision." (quoting *Ware v. Schweiker*, 651 F.2d 408, 412–13 (5th Cir. Unit A 1981)).

B. <u>The ALJ's Omission of Limitations in Concentration, Persistence, and Pace in Plaintiff's RFC</u>

Plaintiff also argues that the ALJ failed to include the findings she made in step two and three—that Plaintiff had mild limitations in concentration, persistence, and pace—in Plaintiff's RFC, and failed to explain why such limitations were not included. (Doc. 15, p. 9.)

The ALJ must evaluate Plaintiff's mental impairments using the Psychiatric Review Technique ("PRT"). 20 C.F.R. §§ 404.1520a, 416.920a. This technique requires an assessment of how the claimant's mental impairments impact four broad functional areas, also referred to as "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ rates the degree of limitation in each of the paragraph B criteria as none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). The ALJ must incorporate the PRT pertinent findings and conclusions into the written decision and must make a specific finding as to the degree of limitation for each of the paragraph B criteria. *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005); 20 C.F.R. § 404.1520a(e)(4).

The PRT analysis is a distinct process from the RFC determination. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The degrees of impairment identified in the PRT analysis help the ALJ determine the overall severity of any mental impairment or whether any such impairment meets a listing, while the functional limitations in the RFC help the ALJ determine the kinds of work that a claimant can perform. *Compare* 20 C.F.R. § 404.1520a, *with* 20 C.F.R. § 404.1545.

Here, the ALJ used the PRT to assess Plaintiff's mental impairments and found that Plaintiff was mildly limited in her ability to interact with others and to concentrate, persist, or maintain pace, but not limited in her ability to understand, remember, or apply information, or to adapt or manage herself. R. 15. As to Plaintiff's concentration, persistence and pace, the ALJ specifically found that Plaintiff "has not been found to have significant attention/concentration difficulties, nor has she been prescribed medication to help improve her concentration." R. 15. The ALJ also noted that the record did not reflect that Plaintiff had "any significant difficulties performing simple math calculations such as Serial 3's or Serial 7's, or that she had any difficulty staying on task during evaluations or maintain a conversational exchange with the numerous examiners." *Id*.

The ALJ's findings are supported by the record. For instance, during Plaintiff's treatment at Tampa Bay Area Counseling for her generalized anxiety disorder, Plaintiff's "attention/concentration" was repeatedly noted as "good." R. 883, 955, 962, 965, 967, 969, 974, 976, 980, 982, 984, 986, 989, 992, 994, 996, 998, 1001, 1003, 1005, 1007, 1009, 1011, 1013, 1015, 1017, 1019. In the Mental Residual Functional Capacity Form, Dr. David Hicks noted that Plaintiff did not have deficiencies of concentration, persistence, or pace which would result in frequent failure to complete tasks in a timely manner in work settings or elsewhere. R. 842.

Plaintiff does not dispute the ALJ's findings but argues that the ALJ failed to incorporate Plaintiff's mild limitations in concentrating, persisting, or maintaining pace into the RFC, and did not explain the omission. (Doc. 15, p. 9.)

Despite Plaintiff's contention, the persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC when they find "mild" limitations in the paragraph B criteria, nor are they required to expressly explain why mild paragraph B limitations are not included in the RFC. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979–80 (11th Cir. 2016) (finding that the ALJ did not err by failing to include limitations in the RFC related to the plaintiff's non-severe mental impairment when the ALJ found that the plaintiff had only "mild" limitations); *Guerrera v. Kijakazi*, No. 8:22-cv-00740-AEP, 2023 WL 2446626, *5 (M.D. Fla. Mar. 10, 2023) (affirming ALJ's decision where ALJ properly found mild limitations in the paragraph B criteria and did not explain why the mild limitations were not included in the RFC; "ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations in the paragraph B criteria."); *Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) ("ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations while completing a PRTF."); *Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *9 (S.D. Fla. May

4, 2022) (finding that the ALJ was not required to include mental RFC limitations despite finding "mild" limitations in the paragraph B criteria), *report and recommendation adopted*, 2022 WL 1605318 (S.D. Fla. May 20, 2022); *Bryant v. Comm'r of Soc. Sec.*, No. 2:20-cv-294-JLB-NPM, 2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021) ("[T]he ALJ found mild limitations in all four functional areas," but "did not err in failing to include [functional] limitations in the RFC related to [the plaintiff's] depression, anxiety, bipolar disorder, or insomnia."), *report and recommendation adopted*, 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021); *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, at *5 (M.D. Fla. Feb. 22, 2021) ("Since the ALJ only assessed 'mild' limitations in the four areas of mental functioning, the ALJ did not err by not providing a mental RFC."), *report and recommendation adopted*, 2021 WL 1138179 (M.D. Fla. Mar. 25, 2021); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla. June 9, 2014) ("[T]he plaintiff's assertion that the 'mild' findings meant he had some mental functional limitation is unpersuasive.").

Plaintiff relies on the cases *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011) and *Schinck v. Commissioner of Social Security*, 935 F.3d 1245 (11th Cir. 2019). But these cases are clearly distinguishable from this one. First, in *Winschel*, the ALJ determined at step two that the claimant's mental impairments caused moderate limitations in concentration,

20

persistence, and pace, not mild ones. *Winschel*, 631 F.3d at 1181. Moreover, in *Winschel*, "the ALJ did *not* indicate that medical evidence suggested [the claimant's] ability to work was unaffected by [the moderate] limitation, nor did he otherwise implicitly account for the limitation in the hypothetical." *Id.* (emphasis added). Thus, the Eleventh Circuit held that the ALJ should have explicitly included the limitation in the hypothetical to the VE or otherwise accounted for all the claimant's impairments. *Id.* In contrast, here, the ALJ found Plaintiff's limitations in concentration, persistence, and pace to be mild. R. 15. And, the ALJ explicitly found that, as it related to any mental limitations, "the evidence does not otherwise indicate that there is more than a minimal limitation in claimant's ability to do basic work activities . . . ." R. 15.

*Schink* is likewise distinguishable. 935 F.3d 1245. There, the ALJ determined Schink's mental impairments, including bipolar disorder, were not severe. *Id.* at 1256. The Eleventh Circuit held that the ALJ lacked substantial evidence to support that finding; in other words, the Circuit found that the evidence demonstrated Schink's mental impairments *were* severe. *Id.* at 1264–1268. The Eleventh Circuit went on to say that the ALJ's unsupported finding might have been harmless error had he simply "duly considered [claimant's] mental impairment when assessing his RFC, and reached conclusions about [the] mental capabilities supported by substantial evidence." *Id.* at 1268.

21

However, because the ALJ did not consider the severe limitations in formulating the RFC, the Circuit reversed. *Id*. at 1270.

Here, the ALJ found—and Plaintiff does not dispute—that her mental limitations were not severe. This finding is supported by substantial evidence. The ALJ extensively addressed Plaintiff's mental impairments including her anxiety, nervous breakdown, and concentration issues in her RFC assessment. R.19-24. The ALJ found that Plaintiff's testimony regarding her difficulty concentrating was inconsistent with the record. R. 20. The ALJ discussed the opinions of state agency psychological consultants Dr. Michael Stevens and Dr. Lee Reback. R. 23. Both Dr. Stevens and Dr. Reback found Plaintiff's anxiety was a non-severe impairment and any limitation in her ability to concentrate, persist, or maintain pace was mild. R. 23, 72-73, 92-93. The ALJ found these opinions persuasive. R. 24. Nevertheless, the ALJ explained that she included mental and environmental limitations in the RFC—including requiring "no exposure to unprotected heights, dangerous machinery, or commercial vehicle operation, and only occasional exposure to extreme cold and heat, vibrations, pulmonary irritants, above-average noise levels, and contact with the public"— in part, due to Plaintiff's non-severe anxiety. R. 20-21. Thus, Plaintiff's case is distinguishable from *Schink*, because the ALJ both found Plaintiff's mental impairments were non-severe and discussed how Plaintiff's non-severe mental impairments impacted her RFC determination.

In sum, the ALJ's used the PRT and relied on substantial evidence in determining that Plaintiff had a mild limitation in her ability to concentrate, persist, and maintain pace. The ALJ expressly found that the limitation created no more than a minimal limitation in Plaintiff's ability to work. And, the ALJ discussed how she considered Plaintiff's mild mental limitations in formulating Plaintiff's RFC. Plaintiff demonstrates no error in the ALJ's treatment of Plaintiff's mild mental limitations.

C. The ALJ's Finding that Plaintiff Could Perform Past Work as Actually Performed

The ALJ found that Plaintiff could perform her past relevant work as an accounting clerk. R. 25. Plaintiff argues that this finding was error. Plaintiff argues that her past job required her to write, type, *or* handle small objects for six hours per day, and to handle, grab, or grasp big objects for one hour per day, which, plaintiff asserts, adds up to seven hours of handling per day. (Doc. 15, p. 14.) Plaintiff argues that job exceeded the bounds of the ALJ's RFC assessment, which limited Plaintiff to "frequent" bilateral handling.

"Frequently," under the Selected Characteristics of Occupations, "means that the activity or condition occurs one-third to two-thirds of an 8-hour workday," that is, up to only six hours in an 8-hour workday. Program Operations Manual (POMS), DI 25001.001 Medical and Vocational Quick Reference Guide, https://secure.ssa.gov/ poms.nsf/lnx/0425001001. "Handling"

23

is defined as "[s]eizing, holding, grasping, turning, or otherwise working with the hand or hands. Fingers are involved only to the extent that they are an extension of the hand (rather than as in 'fingering')." *Id*.

The Commissioner responds that – even if she could not perform her past work as she actually performed it – Plaintiff fails to show that she is unable to perform her past work as it is generally performed in the national economy and, therefore, the Court should affirm.

The RFC is the most an individual can still do despite any limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). At step four, the ALJ must determine whether the claimant has the RFC to perform past relevant work, either as the claimant actually performed it or as generally performed in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(2), 416.920(a)(4)(iv). Past relevant work is defined as work that a claimant has done within the past 15 years, that was substantial gainful activity, and lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1); 416.960(b)(1).

To support a finding that the claimant can return to her past relevant work, the ALJ must consider all of the duties of that work and evaluate the claimant's ability to perform them despite her impairments. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n. 3 (11th Cir. 1990). VEs often provide occupational testimony on which an ALJ relies to determine whether a claimant can do her

past relevant work. 20 C.F.R. § 404.1560(b)(2). "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." *Id.* "Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work." *Id.*

A claimant carries the "heavy burden" of showing that her impairment prevents her from performing her past relevant work. *Washington*, 906 F.3d at 1359 (*citing Bloodsworth*, 703 F.2d at 1240). The claimant must demonstrate an inability to perform her "past kind of work, not that [s]he merely be unable to perform a specific job [s]he held in the past." *See Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) (holding that although claimant had demonstrated that he could not perform his past job as a link belt operator at the pipe manufacturing factory, he did not demonstrate that he could not perform such jobs in general because he did not show that climbing and descending stairs is generally a requisite of such jobs). Accordingly, when a claimant's prior job involved functional demands and duties significantly greater than those generally required for that type of work in the national economy, it is not enough for the claimant to show that she cannot perform the demands and duties actually involved in the job as she once held it. *See id.*; SSR 82-61, 1982 WL 31387 (Jan. 1, 1982). Instead, she must show that she

cannot perform the functional demands and job duties of the position generally required nationwide. *Id*.

Here, the VE considered all of the record evidence before testifying that Plaintiff's prior job could be characterized as an accounting clerk and as an insurance clerk. R. 43, 52-53; *see* SSR 82-61 (S.S.A. 1982) ("For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert."). The Dictionary of Occupational Titles defines the job of "Accounting Clerk," as one who:

> Performs any combination of following calculating, posting, and verifying duties to obtain financial data for use in maintaining accounting records: Compiles and sorts documents, such as invoices and checks, substantiating business transactions. Verifies and posts details of business transactions, such as funds received and disbursed, and totals accounts, using calculator or computer. Computes and records charges, refunds, cost of lost or damaged goods, freight charges, rentals, and similar items. May type vouchers, invoices, checks, account statements, reports, and other records, using typewriter or computer. May reconcile bank statements.

DOT 216.482-010.

The ALJ asked the VE about a hypothetical person with Plaintiff's RFC, including a person who could frequently handle objects bilaterally. R. 53-54. The VE testified that such a hypothetical person could perform Plaintiff's past relevant work as an accounting clerk, as she actually performed it and as

generally performed in the national economy. R. 54-55. Relying in part on this testimony, the ALJ ultimately found that Plaintiff could perform her past work as she actually performed it and as it was generally performed.

Plaintiff argues that the ALJ's finding that Plaintiff could perform her past work as she actually performed is inconsistent with the ALJ's ultimate RFC assessment, indicating that she could handle objects "frequently," meaning up to six hours of an 8-hour workday. (Doc. 15, p. 14.) Plaintiff relies on the Work History Report she filled out in April 2019 during her application for disability benefits. R. 364. Plaintiff indicated that her past job required her to "handle, grab, or grasp big objects" one hour per day and "write, type, o*r* handle small objects" six hours per day. R. 368 (emphasis added). Because her description of the job as she performed it could theoretically involve handling objects up to seven hours during an eight-hour workday, rather than six hours (the amount suggested by the word "frequently"), Plaintiff asserts her RFC precludes her performance of the job.

Even assuming Plaintiff's prior work as she performed it required handling objects for seven hours per day (which is not clear, even from her description of the job), her argument would not win the day. That is because the ALJ also found that Plaintiff could perform the job requirements of accounting clerk as that job is generally performed in the national economy. That is, Plaintiff has not demonstrated "an inability to perform [her] 'past kind

of work.'" *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 831–32 (11th Cir. 2013) (citations omitted).

The ALJ relied on the VE's testimony and on the DOT in finding that Plaintiff could perform the job of accounting clerk. (R. 25). Thus, substantial evidence supports the ALJ's finding. *See Adamo v. Comm'r of Soc. Sec.*, 365 F. App'x 209, 213–14 (11th Cir. 2010) (substantial evidence supported ALJ's finding that claimant could perform past relevant work as a construction superintendent involving light exertion where VE testified to the same; claimant argued the job as actually performed included heavy labor, but failed to demonstrate that the job as generally performed in the national economy requires heavy labor).

Plaintiff has not met her burden of demonstrating that she is unable to perform her past job of accounting clerk as it is generally performed in the national economy. Plaintiff has not demonstrated that the ALJ committed harmful error at step four.

D. The Social Security Administration's Statements Regarding Specific Vocational Preparation ("SVP") Levels

The ALJ found Plaintiff could perform three jobs that required significant training. Plaintiff argues that this contradicts the Commissioner's prior finding that she could perform work that required very little training.

The DOT defines "Specific Vocational Preparation" as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT Appendix C - Components of the Definition Trailer, 1991 WL 688702. "This training may be acquired in a school, work, military, institutional, or vocational environment." *Id*. "It does not include the orientation time required of a fully qualified worker to become accustomed to the special conditions of any new job. Specific vocational training includes: vocational education, apprenticeship training, in-plant training, on-the-job training, and essential experience in other jobs." *Id*.

SVP level one requires a "[s]hort demonstration only." DOT Appendix C - Components of the Definition Trailer, 1991 WL 688702. SVP level four requires "[o]ver 3 months up to and including 6 months" of preparation, and SVP level five requires "[o]ver 6 months up to and including 1 year" of preparation. DOT Appendix C - Components of the Definition Trailer, 1991 WL 688702.

In her decision, the ALJ found Plaintiff capable of performing her past work as an accounting clerk, a job with an SVP level of five, as well as the jobs of cost accounting clerk and return item clerk, both of which have an SVP level of four. R. 25-26.

Plaintiff argues that the ALJ erred in finding that she could perform jobs with SVP levels of four and five. She relies on letters issued by the Social Security Administration ("SSA"), denying her application at the initial and reconsideration stages, stating that Plaintiff was "still capable of performing work that requires only a very short, on-the-job training period" (R. 80, 82, 103). (Doc. 15, p. 17-18.) Because the jobs the ALJ identified for Plaintiff are SVP levels four and five, Plaintiff contends the ALJ erred. (*Id.*)

The Commissioner first argues that the ALJ was not bound by the statements in the initial denial letters (R. 80, 82, 103) and next notes that, because Plaintiff worked as an accounting clerk for many years, Plaintiff would require no more than a very short, on-the-job training to resume a job as an accounting clerk or a job of lesser skill. (Doc. 22 at 12.)

Plaintiff cites no legal authority to support her assertion that the ALJ was bound by or otherwise required to account for the language in the SSA's denial letters. Once Plaintiff appealed the agency's initial and reconsideration decisions, those statements were no longer binding on the agency. 20 C.F.R. § 404.905 (agency's initial determination is binding unless claimant requests reconsideration); 20 C.F.R. § 404.921 (reconsideration decision is binding unless claimant requests an administrative hearing); 20 C.F.R. § 404.953 (ALJ must base his or her decision on a preponderance of the evidence offered at the hearing or otherwise included in the record).

In fact, the ALJ was not required to discuss findings made at lower levels of agency review. The State agency disability determinations at the initial and reconsideration levels were made by State agency disability examiners. 20 C.F.R. § 404.1615(c). "Findings made by a State agency disability examiner made at a previous level of adjudication about a . . . vocational issue" are classified as "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 404.1520b(c)(2). The SSA regulations explicitly state that the ALJ "will not provide any analysis about how [she] considered such evidence in [her] determination or decision." 20 C.F.R. § 404.1520b(c)(2); *Flores v. Kijakazi*, No. 8:22-CV-958-WFJ-AEP, 2023 WL 5697385, at *2 (M.D. Fla. Sept. 5, 2023) (rejecting argument that ALJ was limited to SVP level 1 jobs because he was bound by statements at the initial and reconsideration level that claimant was capable of a job requiring "only a very short, on-the-job training"); *Hedges v. Comm'r of Soc. Sec.*, 530 F. Supp. 3d 1083, 1097 (M.D. Fla. 2021) (same).

During the hearing before the ALJ, Plaintiff testified that she worked in the accounting department for insurance companies from 2008 to 2018. R. 41. The VE testified that Plaintiff's past work could be characterized as that of an accounting clerk with an SVP level of five. R. 43. After reviewing the record and listening to Plaintiff's testimony regarding her alleged disabilities, the VE testified that Plaintiff could perform her past work as an accounting clerk. R.

54-55. The VE also testified that Plaintiff could work as a cost accounting clerk and a return item clerk, both of which have an SVP level of four. R. 58-59. The ALJ cited to the VE's testimony in concluding that Plaintiff could work as an accounting clerk, a cost accounting clerk, and a return item clerk. R. 25-26. Thus, substantial evidence supports the ALJ's decision.

Plaintiff demonstrates no error in the ALJ's finding that she could perform the jobs identified by the ALJ.

### E. The ALJ's Step Five Finding

At step five of the sequential evaluation process, the ALJ made the alternative finding that, in addition to her past relevant work, Plaintiff could perform work in the semi-skilled occupations of cost accounting clerk and return item clerk. R. 26.

Plaintiff argues the ALJ's alternative step five finding is legally insufficient because (1) skills from Plaintiff's past relevant work must be transferable to skilled work while the jobs identified by the ALJ are semi-skilled and (2) skills must be transferable to a "significant range" of skilled work, which suggests there must be more than two jobs to which Plaintiff's skills must be transferable. (Doc. 15, p. 16-17.)

The Commissioner argues that the Court need not address this argument as the ALJ's findings at step four are supported by substantial evidence and thus sufficient to support the finding that Plaintiff is not

disabled. (Doc. 22, p. 1-2.) I agree. 20 C.F.R. § 404.1520(a)(4). ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Nonetheless, I address Plaintiff's argument.

If a claimant cannot perform her past relevant work, the ALJ proceeds to step five of the sequential process. 20 C.F.R. § 404.1520(a)(4). At that step, the ALJ must assess the RFC and the claimant's age, education, and work experience to determine if the claimant can adjust to other work. *Id.* at § 404.1520(a)(4)(v). If the claimant can adjust to other work, the ALJ will find the claimant not disabled; if the claimant cannot adjust to other work, the ALJ will find the claimant disabled. *Id.* The ALJ must also ascertain whether the jobs the claimant can perform "exist in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(1); *Biestek*, 587 U.S. at, 100.

Plaintiff asserts that at step five, the ALJ was prohibited from considering potential jobs involving semi-skilled work, rather than skilled work, and was required to find a range of potential jobs rather than just two to which her skills could transfer. (Doc. 15, p. 15-16.) Plaintiff points to the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, section 201.00(e),[3] which concerns the "[m]aximum sustained work capability

---

[3] Plaintiff cites to 20 C.F.R. Part 404, Subpart P, Appendix 2, section 201.00(g). (*Id.*) It appears Plaintiff cites to the wrong subsection for her

limited to sedentary work as a result of severe medically determinable impairment(s)." However, this subsection merely indicates that a claimant's acquired skills from work may warrant a finding that the claimant is able to engage in substantial gainful activity, regardless of age or education:

> (e) The presence of acquired skills that are readily transferable to a significant range of skilled work within an individual's residual functional capacity would ordinarily warrant a finding of ability to engage in substantial gainful activity regardless of the adversity of age, or whether the individual's formal education is commensurate with his or her demonstrated skill level. The acquisition of work skills demonstrates the ability to perform work at the level of complexity demonstrated by the skill level attained regardless of the individual's formal educational attainments.

20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 201.00(e). This subsection does not state that skills from Plaintiff's past relevant work must be transferable to "skilled work" only, nor is it a blanket rule that Plaintiff's skills must be transferable to a "significant range" of skilled work.

The ALJ is not limited to looking for only skilled work available to a claimant at step five, even when evaluating transferability of a claimant's skills. When making a step-five finding, the ALJ will find a claimant has skills that can be used in other jobs "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled

---

argument; section 201.00(e) includes the language Plaintiff relies on in her argument. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 201.00(e).

*or semi-skilled* work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1) (emphasis added). The transferability of skills "depends largely on the similarity of occupationally significant work activities among different jobs." *Id.* "Transferability is most probable and meaningful among jobs in which . . . [t]he same *or a lesser degree* of skill is required." *Id.* § 404.1568(d)(2)(i) (emphasis added); *accord* SSR 82-41, 1982 WL 31389, at *5. Thus, the ALJ did not err in finding Plaintiff's skills from her skilled work as an accounting clerk transferred to the semi-skilled work of cost accounting clerk and return item clerk. R. 26-27.

Plaintiff's argument that the ALJ needed to find more than two jobs with transferable skills (Doc. 15, p. 15-16), likewise lacks merit. The relevant question in step five is whether jobs exist "in significant numbers in the national economy," not whether there is a "significant range" of different types of jobs the claimant can perform. *See* 20 C.F.R. § 404.1560(c)(1); *Biestek*, 587 U.S. at, 100. "Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ]." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quoting *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986).

Here, the ALJ found that work existed in significant numbers in the national economy based on the VE's testimony that there were 40,000 jobs

nationally that Plaintiff could perform. R. 26. Specifically, the VE testified that Plaintiff could perform work as a cost accounting clerk, of which there were 20,000 jobs nationally, and as a return item clerk, of which there are 20,000 jobs nationally. *Id*. The ALJ's finding is therefore supported by substantial evidence. *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015).

## V.    Conclusion

Accordingly:

(1)    The conclusion of the Commissioner's decision below is AFFIRMED.

(2)    The Clerk of Court shall enter judgment in the Defendant's favor, terminate any pending motions, and close the case.

ORDERED on August 30, 2024.

NATALIE HIRT ADAMS
United States Magistrate Judge